## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| JEANETTE HUDGINS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 11-882 |
| THE TRAVELERS HOME AND MARINE | : | |
| INSURANCE COMPANY, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM

YOHN, J.                                                                                           July 31, 2013

Plaintiff, Jeanette Hudgins, brings this insurance action against defendant, The Travelers

Home and Marine Insurance Company ("Travelers"), alleging breach of contract, bad faith

conduct by an insurer under 42 Pa. Cons. Stat. § 8371, and breach of the duty of good faith and

fair dealing. Before me is Travelers's motion for partial summary judgment on the bad faith

claims (counts III, IV, and V of the amended complaint) and the claim of breach of the duty of

good faith and fair dealing (count VI). For the reasons set forth below, I will grant the motion in

part and deny the motion in part.

## I.      Factual and Procedural Background[1]

On February 2, 2009, Hudgins's home located at 5428 Oakland Street, Philadelphia,

_____

[1] Unless otherwise noted, these facts are undisputed. Where there is a dispute, I have
looked to the record and construed the evidence in the light most favorable to plaintiff, the non-
movant. *See Abdul-Aziz v. Nwachukwu*, No. 12-1793, 2013 WL 1736800, at *2 n.2 (3d Cir. Apr.
23, 2013) ("Summary judgment is proper where, viewing the evidence in the light most favorable
to the nonmoving party and drawing all inferences in favor of that party, there is no genuine issue
of material fact and the moving party is entitled to judgment as a matter of law.").

Pennsylvania ("the property"), burned down. It was insured with Travelers under a homeowner's policy that was in effect from June 27, 2008, through June 27, 2009. Hudgins was the named insured under the policy. (Def.'s Statement of Material Facts Not in Dispute ("DSF") ¶¶ 1, 2; Pl.'s Reply to Def.'s Statement of Material Facts Not in Dispute ("PRF") ¶¶ 1,2.) She lived at the property with her husband and her son, Derrick Morgan. (DSF ¶ 22; PRF ¶ 22.) Derrick had a history of mental illness, including paranoid schizophrenia. (Pl.'s Resp. to Def.'s Mot. Partial Summ. J. ("Pl.'s Resp."), Exs. E, G.)

Soon after the notice of loss, Hudgins's public adjuster that Derrick possibly started the fire at issue. (Def.'s Mot. Partial Summ. J. ("Def.'s Mot.") Ex. O at CLM0008.) If Derrick had acted with the intent to cause the fire loss, then Travelers would not have to cover the fire loss claim pursuant to the "Exclusions" section of Hudgins's insurance policy. (DSF ¶¶ 21-24; PRF ¶¶ 21-24; *see also* Def.'s Mot. Ex. N.) Travelers sent plaintiff a reservation of rights letter on February 4, 2009, along with a $5,000 check as an advance on the policy. (DSF ¶ 25; PRF ¶ 25.)

As part of its ongoing investigation, Travelers requested that Hudgins submit to an examination under oath ("EUO"). It did so pursuant to the "Duties After a Loss" provision of the homeowner's insurance policy. Hudgins complied and gave her EUO on March 25, 2009. On the same day, Derrick was arrested for arson and criminal charges were filed against him. There was some delay in the criminal proceedings because Derrick was initially adjudged incompetent to stand trial. Eventually, on December 8, 2009, all charges against Derrick were withdrawn. (DSF ¶¶ 31-36; PRF ¶¶ 31-36.)

From February to December, 2009, Travelers sent Hudgins boilerplate letters reserving its rights with respect to coverage and advising her that its investigation was ongoing. (DSF ¶ 37;

PRF ¶ 37.) On December 17, 2009, defense counsel emailed Joseph Dennler, Esq., requesting that Derrick submit to an EUO as soon as possible in order to resolve the fire loss claim. (DSF ¶ 38; PRF ¶ 38.) Dennler had previously been retained by Hudgins to assist her with respect to the March 25, 2009 EUO. (Pl.'s Resp. Ex. J ¶ 2.) He was no longer Hudgins's counsel, and he failed to timely communicate defendant's request to plaintiff's current counsel. (DSF ¶¶ 38-39; PRF ¶¶ 38-39.)

On February 5, 2010, Hudgins filed a lawsuit against Travelers in the Court of Common Pleas of Philadelphia County. At this point defense counsel informed plaintiff's current counsel that its investigation was ongoing and that Travelers required Derrick's EUO. (DSF ¶ 40; PRF ¶ 40.) Derrick submitted to an EUO on April 26, 2010. Travelers verbally communicated its intent to accept coverage on May 18, 2010, and it formally documented its acceptance on June 24, 2010. (Am. Compl. ¶ 53; Def.'s Mot. Ex. O at CLM0029.)

Because the fire rendered her house uninhabitable, plaintiff was forced to rent an apartment. Once it accepted coverage, Travelers was obligated to pay her rent, as it constituted "additional living expenses" ("ALE") under the policy. (Def.'s Mot. Ex. N at 21.) Thus, on June 18, 2010, it issued a check to plaintiff in the amount of $11,520 to cover plaintiff's rent from the date of loss through August 2010. On September 8, 2010, Travelers issued a check for $72,215.96 to plaintiff and her mortgage company, Chase Home Financial, to cover the costs of rebuilding her house. On September 22, 2010, Travelers issued another ALE check in the amount of $2,560 to cover plaintiff's rent from September 2010 through December 2010. On the same day, it issued a check for $35,981.33 to plaintiff to cover her loss of personal property. Finally, on January 21, 2011, defendant sent plaintiff an ALE check for $1,920 to cover her rent from

January 2011 through March 2011. (DSF ¶ 45; PRF ¶ 45.) On March 3, 2011, defense counsel

sent a letter to plaintiff's counsel stating that Travelers would terminate ALE payments effective

April 1, 2011. (DSF ¶ 49; PRF ¶ 49.)

In her first action, initiated in state court on February 5, 2010, Hudgins claimed that

Travelers had breached the insurance contract and acted in bad faith due to Travelers's failure to

act promptly, failure to conduct a reasonable investigation, failure to timely affirm or deny

coverage, and failure to timely investigate and pay claims. (DSF ¶¶ 3-4; PRF ¶¶ 3-4.) On July 30,

2010, Travelers moved for judgment on the pleadings, and on August 10, 2010, the Court of

Common Pleas granted the motion. (DSF ¶¶ 5-7; PRF ¶¶ 5-7.)

Judgment was entered against Hudgins because, according to the court, Hudgins had

failed to fulfill all her policy obligations prior to filing suit. It concluded that Travelers was

entitled under the policy to take Derrick's EUO, and that the insurance policy "preclude[d]

plaintiff from bringing suit against Defendant prior to fulfillment of all [her] obligations under

the insurance policy." Opinion, *Hudgins v. Travelers Home and Marine Ins. Co.*, February Term

2010 No. 0827 (Pa. Ct. Com. Pl. Feb. 11, 2011), at 10 (att. as Ex. C. to Def.'s Mot. to Dismiss,

ECF No. 5). On September 7, 2010, Hudgins appealed the order to the Pennsylvania Superior

Court. (DSF ¶¶ 7-8; PRF ¶ 7-8.)

On January 25, 2011, while the appeal was still pending, Hudgins filed another complaint

against Travelers in the Philadelphia Court of Common Pleas. She again alleged breach of

contract in connection with the insurance policy and bad faith conduct. The alleged bad faith

conduct included improper investigation, unreasonable interpretation of the insurance policy, and

improper handling, processing, and adjusting of Hudgins's fire loss claim. Hudgins also added a

claim that defendant breached its implied duty of good faith and fair dealing. (DSF ¶¶ 9-11; PRF ¶¶ 9-11.) On February 4, 2011, Travelers removed the action to this court. (Notice of Removal, *Hudgins v. Travelers Home and Marine Ins. Co.*, No. 11-882 (E.D. Pa. Feb. 4, 2011), ECF No. 1, at 9.) On July 25, 2011, plaintiff amended her complaint to include additional averments about the parties' disagreement over the amount of loss, defendant's interpretation of the policy's appraisal provision, and defendant's refusal to continue paying ALE to Hudgins. (DSF ¶ 17; PRF ¶ 17.)

On November 21, 2011, the Superior Court affirmed the August 10, 2010 order of the Court of Common Pleas granting judgment against Hudgins in her first action against Travelers. The Pennsylvania Supreme Court denied leave to appeal on April 4, 2012. (DSF ¶¶ 18-19; PRF ¶¶ 18-19) On April 24, 2012, based on the decision of the Superior Court, I granted partial summary judgment to Travelers on one of Hudgins's breach of contract claims in this (the second) action. Specifically, because the Court of Common Pleas and Superior Court found that Travelers properly invoked a contractual right to take Derrick's EUO before resolving plaintiff's insurance claim, I found that this particular breach of contract claim[2] was precluded under the doctrine of collateral estoppel. (DSF ¶ 20; PRF ¶ 20; Order, *Hudgins v. Travelers Home and Marine Ins. Co.*, No. 11-882 (E.D. Pa. April 24, 2012), ECF No. 49, at 2 n.2.) I also ordered plaintiff to submit a statement of claims to clarify the factual bases for her claims and the damages sought. This was submitted on October 10, 2012. (*See* Pl.'s Statement of Claims, Dates Covered and Damages Sought ("Pl.'s Statement of Claims"), ECF No. 71.)

---

[2] Hudgins had alleged that Travelers breached the contract by the "imposition of asserted duties which do not exist within the terms of [the] insurance policy." (Am. Compl. ¶ 87.)

Pursuant to my scheduling order of May 5, 2011, bifurcating Hudgins's breach of contract claims from her bad faith claims, Travelers now moves for summary judgment on the latter.

## II.     Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 743 (3d Cir. 1996). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). To establish that there is no genuine dispute as to any material fact, a party may rely on "depositions, documents, electronically stored information, affidavits or declarations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c). The court must take the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party. *See Small v. Seldows Stationery*, 617 F.2d 992, 994 (3d Cir. 1980).

The parties assume that Pennsylvania insurance law applies, and I agree. *See Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 226 (3d Cir. 2007) (court sitting in diversity looks to choice of law rules of forum state; here, under Pennsylvania law, I must apply the law of the forum with the "most interest in the problem"). Under section 8371, "'[b]ad faith' on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy." *Terletsky v. Prudential*

*Prop. and Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994). It "encompasses a broad range

of insurer conduct," including "unreasonable delay in handling claims"; "failure to communicate

with the insured"; and "inadequate investigation or fail[ure] to perform adequate legal research

concerning a coverage issue." *Smith v. Allstate Ins. Co.*, 904 F. Supp. 2d 515, 524 (W.D. Pa.

2012) (collecting cases).  Bad faith "must be proven by clear and convincing evidence and not

merely insinuated." *Terletsky*, 649 A.2d at 688. "At the summary judgment stage, the insured's

burden in opposing a summary judgment motion brought by the insurer is commensurately high

because the court must view the evidence presented in light of the substantive evidentiary burden

at trial." *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005) (internal quotation

marks omitted). "Nonetheless, if a reasonable jury could find that [the insurer] did not have a

reasonable basis for denying benefits under the policy and knew of or recklessly disregarded this,

summary judgment is not appropriate." *Smith*, 904 F. Supp. 2d at 525.

## III.    Application

Hudgins asserts the following factual bases for her bad faith claims, as set forth in her

statement of claims and response brief. She states that Travelers conducted a bad faith

investigation of her fire loss claim by requiring and then unreasonably delaying Derrick's EUO.

She asserts that Travelers processed her fire loss claim in bad faith when it refused to reinstate

ALE payments effective April 1, 2011. She claims that Travelers interpreted the insurance policy

in bad faith in the following respects: (1) it imposed a requirement that Derrick submit to an

EUO; (2) it deducted depreciation from the amount of reimbursement it gave to Hudgins for her

loss of personal property; and (3) it imposed a requirement that Hudgins seek an appraisal for

disputed property values prior to filing a lawsuit. Hudgins asserts that Travelers engaged in bad

faith delay during the litigation of her first action in the Philadelphia Court of Common Pleas. Finally, Hudgins asserts a separate claim that Travelers breached its duty of good faith and fair dealing. (*See* Pl.'s Statement of Claims, at 1.)

Travelers moves for summary judgment on the claim of breach of the duty of good faith and fair dealing. It argues that Pennsylvania law prohibits Hudgins from maintaining such a claim simultaneously with claims under section 8371. In its reply brief, it adds the argument that a breach of contract claim subsumes any claim for breach of the implied covenant to deal in good faith.

Travelers moves for summary judgement on all the bad faith claims based on the following arguments. First, Travelers argues that a section 8371 claim must be predicated on a denial of coverage. Thus, because Travelers accepted coverage, it cannot be liable for bad faith. Second, Travelers argues that all the bad faith claims are precluded by res judicata and/or collateral estoppel based on the decisions of the Court of Common Pleas and the Superior Court in Hudgins's earlier action. Third, Travelers attacks all of Hudgins's bad faith claims on the ground that there is insufficient evidence for a reasonable jury to find by clear and convincing evidence that the defendant did not have a reasonable basis for denying benefits under the policy and knew of or recklessly disregarded its lack of a reasonable basis.

**A.** **Whether Hudgins can simultaneously bring claims for bad faith under section 8371 and breach of the duty of good faith and fair dealing under the common law**

Travelers contends that Pennsylvania law prohibits a plaintiff from bringing a claim that an insurer breached the duty of good faith and fair dealing, which Hudgins asserts in Count VI of the amended complaint, while also bringing a bad faith claim under section 8371. But the

Pennsylvania Supreme Court has explained that "an action under § 8371 is distinct from the common law cause of action for breach of the contractual duty of good faith." *Ash v. Continental Ins. Co.*, 932 A.2d 877, 884 (Pa. 2007). *See also Birth Center v. St Paul Cos., Inc.*, 787 A.2d 376, 409 ("I believe that the law in this Commonwealth establishes that there are two separate 'bad faith' claims that an insured can bring against an insurer—a contract claim for breach of the implied contractual duty to act in good faith, and a statutory bad faith tort claim sounding in tort under [42 Pa. Cons. Stat. § 8371].") (Nigro, J., concurring). As Hudgins points out, a claim of breach of the implied duty to act in good faith is not duplicative of a claim under section 8371 because a plaintiff may seek differing remedies: "[a] cause of action for a breach of the implied covenant of good faith and fair dealing may allow for compensatory damages that go beyond the damages provided by . . . a section 8371 claim." *Zaloga v. Provident Life and Accident Ins. Co. of Am.*, 671 F. Supp. 2d 623, 629 (M.D. Pa. 2009). Thus, the fact that plaintiff has also brought a bad faith claim does not preclude a claim for breach of a duty of good faith and fair dealing.

In its reply brief, Travelers argues that plaintiff is not bringing a common law contract claim, but rather a tortious breach of fiduciary duty claim. Defendant bases this on (1) the language in the complaint; (2) its grouping with the bad faith claims; and (3) the fact that Hudgins seeks punitive damages in connection with the claim. Pennsylvania law does not recognize a claim sounding in tort for breach of the fiduciary duty of good faith and fair dealing in the first-party insurance context. *See Zaloga*, 671 F. Supp. 2d at 630-32 (citing *Ash*, 932 A.2d at 884).

However, in my order of April 24, 2012, I explicitly dubbed Count VI a "breach-of-contract claim." Travelers argues that, if this is the case, the claim for breach of the implied

covenant of good faith and fair dealing is subsumed by the breach of contract claim in Count I. Defendant is correct. *See, e.g.*, *Cummings v. Allstate Ins. Co.*, 832 F. Supp. 2d 469, 473 (E. D. Pa. 2011) ("[A] breach of the covenant of good faith is nothing more than a breach of contract claim and . . . separate causes of action cannot be maintained for each, even in the alternative." (quoting *JHE, Inc. v. Se. Penn. Transp. Auth.*, No. 1790 Nov. Term 2001, 2002 WL 1018941, at *7 (Pa. Ct. Com. Pl. May 17, 2002))); *Zaloga*, 671 F. Supp. 2d at 631 ("[A] breach of the implied covenant of good faith and fair dealing merges with a breach of contract claim.").

Thus, regardless of whether Count VI sounds in tort or contract, plaintiff cannot maintain such a claim. I will grant summary judgment to defendant on Count VI.

### B.     Whether acceptance of coverage precludes a bad faith action

Travelers argues that a bad faith action can only be maintained where an insurer denies coverage. Thus, because it accepted coverage of Hudgins's fire loss claim, Travelers asserts that it cannot be held liable for bad faith. However, "bad faith insurance practices include conduct independent of denial of benefits, such as unfair investigation techniques or delayed payment of claims." *Zenith Ins. Co. v. Wells Fargo Ins. Servs. of Penn., Inc.*, No. 10-5433, 2011 WL 6210686, at *3 (E.D. Pa. Dec. 13, 2011) (citing *O'Donnell v. Allstate Ins. Co.*, 734 A.2d 901, 904 (Pa. Super. Ct. 1999)). Accordingly, while plaintiff's theories do not implicate a denial of coverage, she does allege that Travelers unreasonably delayed its investigation and coverage decision. (*See* Am. Compl. ¶¶ 88-90, 94-96.) Moreover, Hudgins does point to the denial of benefits short of a full rejection of coverage: she challenges the depreciation reduction of her personal property claim and the refusal to reinstate her ALE payments. (Pl.'s Statement of Claims, at 1.) Defendant's argument that section 8371 is limited to coverage denials is contrary

to Pennsylvania law and I reject it.

**C.    Whether res judicata and/or collateral estoppel preclude the bad faith claims**

Travelers argues that the decision of the Court of Common Pleas, which granted judgment on the pleadings to Travelers in Hudgins's first lawsuit without prejudice to Hudgins's right to re-file her claim after Derrick provided an EUO, and the Superior Court's decision to affirm that judgment preclude *all* of Hudgins's bad faith claims. Travelers invokes the doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion). Where a party relies on a state court decision to preclude a claim brought in federal court, the federal court must apply the preclusion principles developed by that state. *See Gregory v. Chehi*, 843 F.2d 111, 116 (3d Cir. 1988). "Under the Full Faith and Credit Statute, 28 U.S.C. § 1738, 'judicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of' the state from which they emerged. Section 1738 'has long been understood to encompass the doctrines of res judicata, or claim preclusion, and collateral estoppel, or issue preclusion.'" *R&J Holding Co. v. Redev. Auth. of Cnty. of Montgomery*, 670 F.3d 420, 426 (3d Cir. 2011) (quoting *San Remo Hotel v. City & Cnty. of S.F.*, 545 U.S. 323, 326 (2005)). Because Travelers relies on the decisions of Pennsylvania state courts, I am guided by Pennsylvania law on preclusion.

**1.    Res judicata**

"Res judicata, or claim preclusion, prohibits parties involved in prior, concluded litigation from subsequently asserting claims in a later action that were raised, or could have been raised, in the previous litigation." *Wilkes ex rel. Mason v. Phoenix Home Life Mut. Ins. Co.*, 902 A.2d 366, 376 (Pa. 2006) (citing *R/S Fin. Corp. v. Kovalchick*, 716 A.2d 1228, 1230 (Pa. 1998)). "Where

there has previously been rendered a final judgment on the merits by a court of competent jurisdiction, the doctrine of res judicata will bar any future suit on the same cause of action between the same parties." *Matternas v. Stehman*, 642 A.2d 1120, 123 (Pa. Super. Ct. 1994). Under Pennsylvania law, the following elements must be present for res judicata to apply: "(1) identity of issues; (2) identity in the cause of action; (3) identity of persons or parties to the action; and (4) identity of the capacity of the parties suing or being sued." *Daley v. A.W. Chesterton, Inc.*, 37 A.3d 1175, 1189-90 (Pa. 2012) "The essential inquiry [in a res judicata analysis] is whether the ultimate and controlling issues have been decided in a prior proceeding in which the present parties had an opportunity to appear and assert their rights." *Chada v. Chada*, 756 A.2d 39, 42 (Pa. 2000) (quoting *Hammel v. Hammel*, 636 A.2d 214, 218 (Pa. Super. Ct. 1994)).

Travelers contends that the judgment in Hudgins's earlier action constitutes res judicata barring the entirety of her bad faith claims. Plaintiff and defendant join issue on whether judgement entered without prejudice is a "final judgment on the merits" for res judicata purposes. The Court of Common Pleas ordered that "Plaintiff['s] Complaint is dismissed in its entirety, without prejudice, due to Plaintiff's claims being barred by her failure to fulfill all contractual obligations, pursuant to the insurance contract with Defendant, prior to filing the above-referenced action." (Def.'s Mot. Ex. E.) The Superior Court framed the issue as follows:

> Essentially, the legal issue that needs to be determined is whether Derrick was required to give a statement under oath to Travelers and the effect of that failure. The contract requires fulfillment of the duties of cooperation prior to filing suit. Therefore, if Derrick is required to give a statement, there has not been the required contractual cooperation; if he is not, the claim survives the motion for judgment on the pleadings.

(Def.'s Mot. Ex. J. at 6.) The court determined that Travelers could require Derrick's statement, so plaintiff "had not fulfilled her duties under the terms of the contract and [could] not file suit." (*Id.* at 9.)

I find that the judgment entered without prejudice here is analogous to a dismissal due to jurisdictional defect or failure to prosecute. In those contexts, the dismissal does not bar a future lawsuit based on the same cause of action. *See, e.g.*, *Robinson v. Trenton Dressed Poultry Co.*, 496 A.2d 1240, 1243 (Pa. Super. Ct. 1985) ("Like a dismissal with prejudice for failure to prosecute a claim, a dismissal without prejudice is not intended to be res judicata of the merits of the controversy."); *Marincas v. U.S. Mail Delivery Sys., Inc.*, No. 3123 March Term 2004, 2004 WL 1632569, at *1 (Pa. Ct. C.P. July 20, 2004) (explaining that dismissal for lack of jurisdiction due to failure to join indispensable parties does not have res judicata effect). The Superior Court, in affirming dismissal, wrote that "there is no *current* circumstance under which [Hudgins] can prevail." (Def.'s Mot. Ex. J at 9 (emphasis added)). This indicates that Derrick's EUO was a condition precedent to bringing suit, but it does not mean that Hudgins's breach of contract and bad faith claims were substantively meritless after he gave his EUO. In the absence of a final judgment on the merits with regard to plaintiff's bad faith claims, Travelers's res judicata argument that the entirety of plaintiff's bad faith claims are barred by res judicata must fail.

## 2. Collateral estoppel

"Collateral estoppel is 'issue preclusion,' and it prevents relitigation of particular issues," as opposed to res judicata, or claim preclusion, which "prevents relitigation of entire causes of action." *Commonwealth v. States*, 891 A.2d 737, 742 n.8 (Pa. Super. Ct. 2005). The Third Circuit applied Pennsylvania's law of issue preclusion in *Greenleaf v. Garlock Inc.*, 174 F.3d 352 (3d

Cir. 1999).

> Under Pennsylvania law, issue preclusion applies where: (1) the issue decided in the prior adjudication was identical with the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action.

*Id.* 357-58. "The party asserting issue preclusion . . . bears the burden of proving its applicability to the case at hand." *Dici v. Pennsylvania*, 91 F.3d 542, 548-49 (3d Cir.1996). If even one element is not present, a court should not apply issue preclusion to the case. *See id.*

Travelers seeks to invoke collateral estoppel to bar all of plaintiff's bad faith claims. Again, the parties only join issue on the "final judgment" prong of the above test. "The Pennsylvania Supreme Court consults section 13 of the Restatement (Second) of Judgments to define 'final judgments' for purposes of issue preclusion." *Greenleaf*, 174 F.3d at 358 (citing *Shaffer v. Smith*, 673 A.2d 872, 874 (Pa. 1996)). "[F]or purposes of issue preclusion (as distinguished from merger and bar), 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded preclusive effect." *Id.* (quoting Restatement (Second) of Judgments § 13 (1982)). I note that a "more pliant view of finality . . . is appropriate with respect to issue preclusion" than with respect to claim preclusion. Restatement (Second) of Judgments § 13 cmt. b (1982).

> [To require that] a final judgment in the strict sense has been reached in the first action can involve hardship—either needless duplication of effort and expense in the second action to decide the same issue, or, alternatively, postponement of decision of the issue in the second action for a possibly lengthy period of time until the first action has gone to a complete finish. In particular circumstances the wisest course is to regard the prior decision of the issue as final for the purpose of issue preclusion without awaiting the end judgment.

*Greenleaf*, 174 F.3d at 358 (quoting Restatement (Second) of Judgments § 13 cmt. g (1982)) (alterations in the original).

The determination that Derrick's EUO was a condition precedent to plaintiff's suit was not a "strict" final judgment on the merits for res judicata purposes, but this determination *does* constitute "prior adjudication of an issue."[3] The state courts clearly concluded that Travelers was within its contractual rights to require Derrick's EUO. Based on the state courts' decisions, plaintiff is collaterally estopped from arguing that Travelers breached the insurance contract simply by requiring Derrick to submit to an EUO. Moreover, plaintiff cannot contend that Travelers interpreted the contract in bad faith when it correctly required Derrick to submit to an EUO.

Travelers is entitled to summary judgment on plaintiff's bad faith claims to the limited extent that the claims rely on the fact that Travelers sought Derrick's EUO. However, the state court decisions do not constitute final judgment on the merits with respect to any other factual issues underlying Hudgins's bad faith claims. Therefore, I reject Travelers's argument that collateral estoppel completely precludes all of plaintiff's bad faith claims.

### D. Whether there is insufficient evidence to support plaintiff's bad faith claims

Travelers argues that plaintiff has not adduced enough evidence for a reasonable jury to

---

[3] Pennsylvania courts have also looked to section 27 of the Restatement (Second) of Judgments. *See Commonwealth v. States*, 891 A.2d 737, 742 (Pa. Super. Ct. 2005). According to section 27, "Particular reference is made to the distinction in § 13 between finality for purposes of merger and bar and finality for purposes of issue preclusion. Pursuant to this distinction, a litigation may have reached a stage at which issue preclusion is appropriate even though claim preclusion—application of the rules of merger and bar—is not." Restatement (Second) of Judgments § 27 cmt. k (1982).

find by clear and convincing evidence that Travelers did not have a reasonable basis for denying benefits under the policy and knew of or recklessly disregarded its lack of a reasonable basis with respect to (1) Travelers's investigation of the fire loss claim; (2) its interpretation of the policy; (3) its cessation of ALE payments; and (4) its conduct in the first action brought by Hudgins in state court.

### 1. Delay in investigation

As discussed above, Travelers acted within its contractual rights when it requested Derrick Morgan's EUO. However, this does not foreclose the possibility that Travelers unduly delayed its questioning of Derrick. Unreasonable investigation practices leading to a delay in payment of the claim can constitute bad faith under Pennsylvania law. *See Ania v. Allstate Ins. Co.*, 161 F. Supp. 2d 424, 430 (E.D. Pa. 2001). The undisputed evidence shows that Derrick submitted to an EUO on April 26, 2010, and that Travelers accepted coverage soon thereafter. (DSF ¶¶ 41-42; PRF ¶¶ 41-42.) While this may seem like a prompt resolution of plaintiff's fire loss claim, plaintiff argues that "Travelers failed to take the one step it needed to take between March 25, 2009 and December 14, 2009 to resolve a questionable coverage issue"—that is, it failed to talk to Derrick for the nine months he was in police custody. (Pl.'s Br. Opp. Mot. Partial Summ. J. ("Pl.'s Resp. Br."), at 18.) "Travelers claim file does not reveal any basis for failing to attempt the final step it needed to take . . . ." (*Id.* at 19.) Travelers simply replies that the delay was "due to factors beyond defendant's control."[4] (Def.'s Br. Supp. Mot. Partial Summ. J.

---

[4] Travelers attempts to argue that the Superior Court addressed the timeliness and reasonableness of defendant's request for Mr. Morgan's EUO. (Def.'s Reply Br., at 2.) That is simply not true: the Superior Court expressly stated that "as far as the record reveals, [Derrick's EUO] has never been taken, as Derrick has never been produced to Travelers for questioning." (Def.'s Mot. Ex. J at 2.) The Pennsylvania state courts dismissed Hudgins's initial suit due to her

("Def.'s Br."), at 47.) I assume Travelers is referring to the police custody and possibly to Derrick's mental health at the time and the likelihood that he would refuse to testify while charges were pending against him. Nevertheless, Travelers does not explicitly say this and gives no explanation *why* Derrick's detention would preclude taking his EUO. Whether Travelers was prevented from taking Derrick's EUO for some unstated reason, or whether it acted in bad faith by stalling for nine months, is a factual dispute for trial, although probably one that Travelers can easily refute. Summary judgment will be denied.

### 2. Unreasonable interpretation of the policy

"[A]n unreasonable interpretation of the policy provisions as well as a blatant misrepresentation of the facts or policy provisions will support a bad faith claim." *Smith*, 904 F. Supp. 2d at 524 (quoting *Corch Const. Co. v. Assurance Co. of Am.*, 64 Pa. D. & C. 4th 496, 516-17 (Pa. Ct. Com. Pl. 2003)). In determining whether Travelers's interpretation was

---

failure to comply with a condition precedent to filing suit—no more, no less. In the absence of this compliance, they had no reason to pass on the reasonableness of Travelers's actions in seeking the EUO.

There is language in the opinion of the Court of Common Pleas that indicates it found Travelers's timing to be reasonable: "Absent is any affirmative act on the part of Plaintiff to contact Travelers[] to ascertain what, if any, further investigation needed to be conducted prior to making a determination on the fire loss claim. This refutes Plaintiff's allegation that Travelers[] unreasonably delayed the investigation . . . ." *Hudgins v. Travelers Home and Marine Ins. Co.*, February Term, 2010 No. 0827, at 10-11 (Pa. Ct. Com. Pl. Feb. 11, 2011). The Superior Court ignored this conclusion, and it has nothing to do with the ground for entering judgment against plaintiff in her first action—that is, her failure to fulfill a condition precedent to bringing suit. I will not give preclusive effect to this extraneous language, because collateral estoppel only "forecloses re-litigation . . . of an issue of fact or law which was actually litigated and *which was necessary to the original judgment*." *Hebden v. W.C.A.B. (Bethenergy Mines, Inc.)*, 632 A.2d 1302, 1304 (Pa. 1993) (emphasis added) (internal quotation marks omitted).

Nor does res judicata apply to bar claims that "very well could have been" litigated (Def.'s Reply Br., at 3), because there was no final judgment on the merits for res judicata purposes.

17

unreasonable, I am guided by Pennsylvania law on the interpretation of insurance policies. "Insurance policies are contracts, and the rules of contract interpretation provide that the mutual intention of the parties at the time they formed the contract governs its interpretation. Such intent is to be inferred from the written provisions of the contract. If doubt or ambiguity exists it should be resolved in insured's favor." *Am. and Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 540 (Pa. 2010).

### a.       Appraisal defense

Plaintiff alleges that Travelers acted in bad faith when it raised an "appraisal defense" in its motion to dismiss plaintiff's original complaint in this action. After plaintiff filed her amended complaint, the motion to dismiss the original complaint became moot. Travelers never invoked the appraisal defense again. Thus, it argues that the issue of whether this was a frivolous argument is now moot. Travelers makes no argument as to the merits of the claim, such as whether its interpretation of the appraisal provision was correct, or incorrect but reasonable. I reject its mootness argument, because the act of asserting a baseless defense alone—even if it is later withdrawn—can cause delay in litigation and cause the insured to incur litigation costs. Thus, Travelers's reliance, even if temporary, on a possibly frivolous interpretation of the insurance contract can constitute bad faith. *Cf. Mine Safety Appliances Co. v. N. River Ins. Co.*, No. 2:09cv348, 2012 WL 4107872, at *2 (W.D. Pa. Sept. 18, 2012) ("A showing that an insurer has attempted to obstruct the litigation [or] engaged in frivolous behavior" can sustain a bad faith claim.) Since Travelers does not assert any other argument for summary judgment, I will deny its motion with respect to the appraisal subclaim even though a successful prosecution of this claim would seem to result in minimal damages.

### b. Depreciation interpretation

Plaintiff argues that Travelers's deduction for depreciation against her personal property claim constitutes a bad faith interpretation of her policy.[5] I look to the relevant provisions of the policy. It originally provided that:

> 3. Loss Settlement. . . . Covered property losses are settled as follows:
> a. Property of the following types:
> (1) Personal property; . . .
> at actual cash value at the time of loss but not more than the amount required to repair or replace.

(Def.'s Mot. Ex. N at 31.) However, this provision was superseded by Endorsement HO-290 (06-06), "Personal Property Replacement Cost Loss Settlement." (*Id.* at 44.) The initial effective date of the endorsement is not specified, though it was included as part of her homeowner's policy on July 9, 2008, effective from June 27, 2008, to June 27, 2009, and covering the date of the fire. The endorsement provides, in relevant part,

> A. Eligible Property
> 1. Covered losses to the following property are settled at replacement cost at the time of the loss:
> a. Property described in Coverage C ["Personal Property"]; . . .
> . . .
> C. Replacement Cost Loss Settlement Condition
> The following loss settlement condition applies to all property described in A. ["Eligible Property"] above:
> 1. We will pay no more than the least of the following amounts:
> a. Replacement cost at the time of loss without deduction for depreciation;
> b. The full cost of repair at the time of loss;
> c. The limit of liability that applies to Coverage C ["Personal

---

[5] While plaintiff's amended complaint focuses on depreciation applied against her building loss claim, not her personal property loss claim (*see* Am. Compl. ¶ 68.), her statement of claims only mentions "depreciation of personal property claim" as it pertains to her claim for bad faith interpretation of the policy. It appears that the building loss depreciation argument has been abandoned.

> > Property"], if applicable;
> >
> > d.  Any applicable special limits of liability stated in this policy; or
> >
> > e.  For loss to any item described in A.2.a-f. above, the limit of liability that applies to the item.
> >
> > 2.  If the cost to repair or replace the property described in A. above is more than $2,500, we will pay no more than the actual cash value for the loss until the actual repair or replacement is complete. . . .

In the definitions section of the contract, it provides,

> > Actual cash value means the amount it would cost to repair or replace covered property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation, and obsolescence. Actual cash value applies to valuation of covered property regardless of whether that property has sustained partial or total loss or damage.
> >
> > The actual cash value of the lost or damaged property may be significantly less than its replacement cost.

Plaintiff's bad faith interpretation argument is that because Coverage C of the policy refers to specific classes of personal property, and because Travelers deducted depreciation line by line for each item of personal property, "a material dispute of fact exists regarded whether it was reasonable for Travelers to combine all of Mrs. Hudgins['s] personal property items to reach the $ 2,500 threshold to allow it to take depreciation." (Pl.'s Resp. Br., at 21.)

Under the original provisions of the policy, Travelers was clearly entitled to take depreciation on plaintiff's personal property loss claim because the aggregate loss exceeded $2,500. It is less clear under the provisions of endorsement HO-290. Under plaintiff's interpretation, the endorsement would require Travelers to pay the replacement cost (rather than the actual cash value) for every single item that has a replacement/repair cost less than $2,500. According to this reading, the endorsement works a radical change in the policy. As the definition of actual cash value notes, "The actual cash value of the lost or damaged property may

20

be significantly less than its replacement cost." It seems common that aggregate loss will exceed $2,500, but it seems rare that a single household item will cost more than $2,500. Thus, under the endorsement, Travelers would pay the greater amount (replacement cost) far more often than it would under the original policy. This consideration militates against plaintiff's reading, because one assumes such a drastic change would be more clearly articulated and emphasized. *Cf. Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) (noting principle, in statutory interpretation context, that drafters do not alter the "fundamental details" of a statutory scheme through "vague terms or ancillary provisions"—they do not " hide elephants in mouseholes"); *Kerber v. Qwest Grp. Life Ins. Plan*, 647 F.3d 950, 961 (10th Cir. 2011) (applying "elephants-in-mouseholes" principle to interpretation of employee welfare benefit plan under ERISA).

However, plaintiff's reading is not entirely unfounded. Section A.1 refers to "covered losses" in the plural, which supports a reading that loss is not considered in the aggregate; instead, the destruction of each item of property is considered a loss. Meanwhile, section C.2 states that Travelers will not pay more than actual cash value for the "loss" (singular) until the actual "repair or replacement is complete" (also singular). This links the $2,500 threshold to loss of a single item, rather than an aggregation of all the losses.

The contractual provisions may be ambiguous, or they may be unambiguous in favor of one or the other party. My task here is not to definitively construe the contract; rather, I must determine whether plaintiff has adduced enough evidence such that a jury could find, by clear and convincing evidence, that Travelers's interpretation of the personal property loss settlement provisions was "unreasonable." I do not believe that the language of the provisions in question is sufficiently clear so as to firmly preclude Travelers's interpretation or render it unreasonable.

Plaintiff has not adduced any extrinsic evidence to indicate that the parties clearly had a different intent in formulating the endorsement. *See Pellegrino Food Prods. Co., Inc. v. Am. Auto Ins. Co.*, 655 F. Supp. 2d 569, 575-78 (W.D. Pa. 2008) (discussing use of extrinsic evidence to clarify insurance contracts in light of the mandate that ambiguities must be resolved in favor of the insured). Therefore, I conclude that no reasonable jury could find by clear and convincing evidence that Travelers's interpretation (applying depreciation against the claim for loss of personal property) was unreasonable. Therefore, I will grant summary judgment to Travelers on this subclaim.

### c.    Requiring Derrick's EUO

Finally, plaintiff argues that Travelers acted in bad faith when it interpreted the policy as allowing it to require Derrick's EUO. As explained above, the Court of Common Pleas and the Superior Court found that this was an eminently reasonable construction of the insurance contract. Plaintiff is estopped from making this claim, so I need not address whether she has adduced sufficient evidence to support it. Summary judgment is granted to defendant on this subclaim.

### 3.    Cessation of ALE payments

Plaintiff claims that Travelers processed her claim in bad faith when it decided to cease ALE payments effective April 1, 2011. Travelers explains that it ceased paying ALE because seven months after it issued a check there was no progress on rebuilding plaintiff's house, and no extenuating factors to explain the lack of progress. (Def.'s Br., at 48-49.) But there is evidence to support plaintiff's contention that the real reason Travelers stopped paying ALE was because Hudgins sought sanctions in her response to defendant's motion to dismiss. (*See* Def.'s Mot. Exs. CC, DD; Pl.'s Resp. Ex. II.) Specifically, Travelers informed the plaintiff that it was ceasing ALE

payments two days after plaintiff's counsel requested sanctions against Travelers in this action. (*See id*.) Moreover, when plaintiff apprised Travelers that reconstruction was delayed due to a problem with her bank, which would not endorse Travelers's checks for the home repairs, Travelers still refused to reinstate ALE payments. (Def..'s Mot. Ex. DD; Pl.'s Resp. Ex. NN.) Plaintiff has provided some evidence indicating that this may go against Travelers's usual practice. (Pl.'s Resp. Ex. MM.) Therefore, whether the dispute with Hudgins's bank constitutes "extenuating circumstances" such that Travelers would usually extend ALE payments, and did not do so in bad faith, is a triable issue of fact. I will deny summary judgment on this claim.

### 4. Abuse of process

Plaintiff also claims damages stemming from Travelers's alleged bad faith litigation of her first lawsuit in the Court of Common Pleas. In her response, she explains that Travelers made material misrepresentations in its response to discovery requests by failing to produce a "true, correct and complete copy of its claim file" related to Hudgins's fire loss claim. (Pl.'s Resp. Br., at 23.) She does not specify what was missing from the file other than a transcript of Derrick's EUO. (*Id.*; *see also* Am. Compl. ¶¶ 65-66.) Based on this omission, according to Hudgins, Travelers was able to misrepresent to the Court of Common Pleas that Hudgins failed to appear at her son's criminal hearings. (Pl.'s Resp. Br., at 23.) Moreover, it belatedly disclosed a transcript of Derrick's EUO only after discovery had ended. (*Id.*) She avers that Travelers's attorneys advised Travelers to pay the claim one month after she filed suit (and nearly two months *before* Derrick's EUO). She argues that this shows that "Travelers['s] conduct in the Philadelphia Court of Common Pleas was not for the purpose of defending the merits of Mrs. Hudgins['s] claims . . . . Rather, Travelers used the legal proceedings to avoid having to defend the merits of Mrs.

Hudgins['s] claims, which constitutes a perversion of the legal process." (*Id.* at 24.)

As a preliminary matter, I note that plaintiff is not bringing a separate claim for abuse of process. Therefore, the issue is not governed by Pennsylvania law surrounding abuse of process; rather, I continue to look to the standards governing bad faith claims under section 8371. Travelers's conduct during the first lawsuit can clearly be the subject of a bad faith claim. *See, e.g.*, *O'Donnell ex rel. Mitro v. Allstate Ins. Co.*, 734 A.2d 901, 906 (Pa. Super. Ct. 1999) ("[W]e find that the broad language of section 8371 was designed to remedy all instances of bad faith conduct by an insurer, whether occurring before, during or after litigation.") However, "[d]espite the broad language of section 8371, we find that the statute clearly does not contemplate actions for bad faith based upon [an] allegation of discovery violations." *Id.* at 908. *See also Slater v. Liberty Mutual Ins. Co.*, No. 98-1711, 1999 WL 178367, at *2 (E.D. Pa. March 30, 1999) ("Section 8371 provides a remedy for bad-faith conduct by an insurer in its capacity as an insurer and not as a legal adversary in a lawsuit filed against it by an insured.").

To support a bad faith claim, "litigation conduct must be something more than a violation of the operative rules governing litigation. In other words, the conduct must at least be capable of giving rise to an inference that the insurer's action was part of a calculated undertaking 'to evade the insurer's obligations under the insurance contract.'" *Mine Safety Appliances Co.*, 2012 WL 4107872, at *1 (quoting *W.V. Realty, Inc. v. N. Ins. Co.*, 334 F.3d 306, 313 (3d Cir. 2003)). Where there is an "absence of any evidence which demonstrates that [the insurer] was motivated by a dishonest purpose or ill motive, or otherwise breached its fiduciary or contractual duty by utilizing the discovery process to conduct an improper investigation," *O'Donnell*, 734 A.2d at 909, a plaintiff's bad faith claim predicated on the insurer's litigation tactics must fail. On the other

hand, "[a] showing that an insurer has attempted to obstruct the litigation, engaged in frivolous behavior or initiated a declaratory coverage action in a bad faith effort to evade a duty owed under the policy" can sustain a bad faith claim. *Mine Safety Appliances Co.*, 2012 WL 4107872, at *2 (citing *Watson v. Nationwide Mut. Ins. Co. of N. Am.*, No. 11-1762, 2012 WL 2159297, at *9 (E.D. Pa. June 14, 2012)).

Here, Hudgins does not put forth evidence to support her assertion that Travelers's attorneys advised it to pay her claim. She points to an email, attached as an exhibit, that is completely redacted. I do not understand how plaintiff wants me to construe this document, and I agree with Travelers that "[h]er continued reliance upon a redacted email produced by Defendant is improper." (Def.'s Reply Br., at 6.) Travelers points out that plaintiff's counsel easily could have ordered a transcript of Derrick's EUO himself. (*Id.*) While Travelers did represent to the Court of Common Pleas that Hudgins had failed to appear for two preliminary hearings (*see* Pl.'s Resp. Ex. DD ¶ 12), there is no evidence that this was an intentional effort to obstruct litigation rather than an honest mistake. (*See* Pl.'s Resp. Br., at 24 (indicating that the docket report for Derrick's criminal proceedings may be the basis of Travelers's error).) After all, this representation was irrelevant to the ground on which Travelers sought judgment on the pleadings, which was Hudgins's failure to satisfy a condition precedent to bringing suit. It is clear that the issue of Hudgins's attendance at her son's hearings had absolutely no impact on the decision of the Court of Common Pleas or Superior Court. No rational trier of fact could find that Travelers was attempting to "evade a duty owed under the policy" when it included this tangential factual background in its motion.

In short, the evidence adduced by plaintiff falls far short of enabling a reasonable jury to

find by clear and convincing evidence that Travelers did not have a reasonable basis for denying benefits under the policy and knew of or recklessly disregarded this lack of a reasonable basis with respect to Travelers's litigation conduct in Hudgins's first state court action. Therefore I will grant summary judgment to defendant on this issue.

IV.     **Conclusion**

For the reasons set forth above, I will grant summary judgment to Travelers on plaintiff's bad faith claims insofar as they rely on the fact that Travelers required Derrick to submit to an EUO (though not insofar as they rely on the timing of Travelers's examination of Derrick); insofar as they rely on Travelers's deduction for depreciation when covering plaintiff's loss of personal property; and insofar as they rely on Travelers's litigation conduct in plaintiff's first lawsuit in the Court of Common Pleas. I will also grant summary judgment to Travelers on plaintiff's claim that it breached a duty of good faith and fair dealing. I will deny the rest of Travelers's motion.